IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.  § | NO. 1:06-CR-148 |
| § | |
| BRIAN ONEAL HOWARD § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

This report addresses defendant Brian Oneal Howard's ("Howard") "Motion to Suppress."[1] Defendant seeks to suppress evidence seized from a vehicle he was driving on November 1, 2005. An evidentiary hearing on the motion was held on August 1, 2007.

I. FACTUAL BACKGROUND

On November 1, 2005, a city detective, Chad Ainsworth ("Ainsworth"), was on patrol in an unmarked police vehicle in the downtown area of Silsbee, Texas. At approximately 12:30 a.m., he noticed a car driven by defendant traveling very slowly in front of a closed movie theater. That theater had been robbed a few weeks prior.

---

[1] This case is assigned to The Hon. Thad Heartfield. Defendant's "Motion to Suppress" was referred to the undersigned for report and recommendation on June 1, 2007. (Docket No. 30)

A few minutes later, Ainsworth observed the same car again slowly approach the theater, this time from the opposite direction. The driver of the car spotted Ainsworth, and then began "strangely circuitous travels" through downtown Silsbee.

Ainsworth suspected that the driver was "casing" the theater, and that his circuitous movements were an attempt to elude or evade police. Ainsworth followed from a distance, and, on one occasion, after Ainsworth or the driver made a U-turn, they met face to face at an intersection. The defendant, after entering the intersection, immediately put his vehicle in reverse and drove backwards for a short distance in the left lane of the street.

Defendant shortly thereafter parked the car, got out, and began walking away. Ainsworth approached him, asked for his driver's license, and was handed a state identification card. The card identified the driver as the defendant. Ainsworth asked the defendant where he was going, and was told defendant was going to his sister's house (the house in front of which the two were then standing). Ainsworth asked why defendant had parked his car so far away from his sister's house, and the defendant replied "What car?"

Immediately after that initial exchange, a second, uniformed officer arrived. Ainsworth asked for consent to search the car, and the defendant took the car keys

out of his pocket and handed them to Ainsworth.  The subsequent search of the car revealed 11.1 grams of crack cocaine, and a straight razor.  A search of defendant's person revealed $528.

## II.  THE MOTION TO SUPPRESS

Howard argues that he was stopped by Ainsworth without probable cause or reasonable suspicion, and any evidence discovered in the search following that detention should be suppress as fruits of the unlawful detention.  The United States argues that Howard's detention was legal, as Ainsworth had reasonable suspicion that Howard was engaged in criminal activity, and had personally observed Howard violate three traffic laws.  The United States argues further than Howard voluntarily gave consent to search the vehicle.

## III.  DISCUSSION

### A.  Principles of Analysis

The Fourth Amendment of the Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The Fourth Amendment's protection against unreasonable searches and seizures is implemented primarily by a judicially-crafted "exclusionary rule," i.e., the rule that illegally seized items cannot be admitted into evidence during a criminal prosecution. 3 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 661 (2d ed. 1982). When a defendant invokes that rule and moves to suppress evidence or statements allegedly obtained illegally, the United States's burden is to prove that a warrantless seizure comports with the Fourth Amendment. U.S. v. Chavis, 48 F.3d 871, 872 (5th Cir. 1995).

When the exclusionary rule is invoked regarding incriminating evidence obtained as a result of an investigatory stop, the Fifth Circuit applies a two-step analytical framework articulated in Terry v. Ohio, 392 U.S. 1 (1968):

1) The court first determines whether the officer's action was justified at its inception.

2) If so, the court then determines whether the search or seizure was reasonably related in scope to the circumstances that justified the interference in the first place.

For an investigatory stop to be justified at inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. U.S. v. Lopez-Moreno, 420 F. 3d 420, 434 (5th Cir. 2005), cert. denied 546 U.S. 1222 (2006). At the second step, courts hold that investigatory detention "must be temporary and last

no longer than is necessary to effectuate the purpose of the stop." See U.S. v. Dortch, 199 F.3d 193, 200 (5th Cir. 1999) (citing Florida v. Royer, 460 U.S. 491 (1983)).

Individuals can consent to searches of their property, and in such a case, the officer needs neither probable cause nor reasonable suspicion to perform the search. A search conducted pursuant to voluntary consent is one of the well-settled exceptions to the Fourth Amendment's warrant requirement. U. S. v. Tompkins, 130 F.3d 117, 121 (5th Cir. 1997), cert. denied 523 U.S. 1036 (1998). To determine if consent is voluntary, the court considers six factors identified in U.S. v. Jenson, 462 F.3d 399, 406 (5th Cir. 2006).² Moreover, "[c]onsent to search may, but does not necessarily, dissipate the taint of a fourth amendment violation." Id. Generally, any taint is dissipated by consent unless the court determines that there was an unbroken causal connection between the violation and the consent. Id.

**B. Application**

Ainsworth had reasonable suspicion sufficient to stop Howard. Ainsworth observed Howard, late at night, driving slowly in front of a building that had recently

---

² The six factors are: 1) the voluntariness fo the defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with the police; 4) the defendant's awareness of his right to refuse consent; 5) the defendant's education and intelligence; 6) the defendant's belief that no incriminating evidence will be found. Jenson, 462 F.3d at 406.

been burgled. Although this alone would probably merit little notice, Howard turned the vehicle around, and drove past the building, slowly, again. Given the recent burglary, Ainsworth's suspicions that criminal activity was afoot, and that Howard was involved in it, were reasonable.[3] Ainsworth's suspicions were further raised by Howard's next actions: circuitous driving, reversing and driving backwards out of an intersection, parking the car in a high drug trafficking area at a location well away from any likely destination, and walking away. Ainsworth reasonably suspected that Howard was involved in illegal activity, attempting to elude him, and attempting to distance himself from the car.[4] Engaging in evasive maneuvers to avoid police can raise a reasonable suspicion. See U.S. v. Smith, 396 F.3d 579, 584-86 (4th Cir. 2005).

Howard's subsequent consent to Ainsworth's search of the car was voluntary. Despite initially feigning ignorance, Howard immediately thereafter handed the car keys to Ainsworth, and granted him permission to search, after Ainsworth advised Howard that he had seen him driving the car parked several yards away. The only

---

[3] The facts in this case are similar to the facts in Terry. In Terry, the officer noted two men repeatedly walking back-and-forth in front of a store. The officer suspected that the two men were casing the store in order to plan a later robbery. The officer detained the men. The Supreme Court upheld the stop, reasoning that the stop was reasonable because the officer was able to point to particular facts that raised his suspicion that the mens' activity, while innocent by itself, indicated that they were engaged in, or planning to engage in, unlawful activity.

[4] It is unnecessary to address the government's additional contention that Ainsworth observed Howard commit several traffic violations.

factor weighing against voluntariness was the involuntary nature of Howard's detention at the time of consent. Detention alone, however, does not necessarily render any consent involuntary. Howard was not under arrest, had not been detained for long periods of time, and had not been physically restrained or threatened. The circumstances of the search do not indicate in any way that the consent was other than voluntary.

### IV. RECOMMENDATION

The motion to suppress evidence should be denied.

### IV. OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, see Rodriguez v. Bowen, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions

accepted by the district court, see Douglas v. United Servs. Auto. Ass'n., 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

SIGNED this  16   day of August, 2007.

_____
Earl S. Hines
United States Magistrate Judge